IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| MELISSA KRUZEL, | Civ. No. 6:23-cv-01183-AA |
| Plaintiff, | **OPINION & ORDER** |
| vs. |  |
| MOLINA HEALTHCARE, INC.;<br>MOLINA HEALTHCARE OF CALIFORNIA, |  |
| Defendants. |  |

AIKEN, District Judge:

Plaintiff Melissa Kruzel brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendants Molina Healthcare, Inc. ("MHI") and Molina Healthcare of California ("MHC"). *See* Second Am. Compl. ("SAC"), ECF No. 84. Before the Court are Plaintiff's Motions for Leave to File Supplemental Declarations, ECF Nos. 67 and 70, and Defendant MHI's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 86. For the reasons explained below, the Court GRANTS Plaintiff's Motions, ECF Nos. 67 and 70, and DENIES Defendant's Motion, ECF No. 86.

## BACKGROUND

Plaintiff has been an Oregon resident since 2020. SAC ¶ 22; First Kruzel Decl. ¶ 3, ECF No. 47. Plaintiff's phone number begins with a California area code.

Page 1 – OPINION & ORDER

McMahon Decl. ¶ 8, ECF No. 88. Defendant, parent company MHI, is incorporated in Delaware and has its principal place of business in California. Rosenthal Decl. ¶ 3, ECF No. 39. Defendant MHC is a wholly owned subsidiary of MHI. *Id.* MHC is incorporated in California and has its principal place of business in California. *Id.*

Subsidiary "MHC is a managed care organization that contracts with the California Department of Healthcare Services to provide . . . health care benefits to California Medicaid recipients." McMahon Decl. ¶ 3. "MHC . . . conducts member-engagement campaigns[] and offers incentives [including rewards programs] to members who utilize . . . preventive health services[.]" *Id.* ¶¶ 4, 5. Telephone vendors Icario, Inc. ("Icario") and DocGo, Inc. ("DocGo") were hired to place member campaign phone calls. *Id.* ¶ 11–12; Desta Decl. ¶ 6, ECF No. 87.

Plaintiff alleges that she received at least thirty calls (the "subject calls") to her telephone number about Defendants' Wellness Rewards Program (the "member rewards program") between May 23, 2022, and June 30, 2023, SAC ¶¶ 42–43, 47–51; First Kruzel Decl. ¶¶ 5, 13, 16, at least seven of which were artificial or prerecorded voice messages, SAC ¶¶ 47–51, 56, many identical and repetitive, *id.* ¶¶ 62, 47–51.

Plaintiff alleges that she contacted MHC several times to stop the calls. *Id.* ¶¶ 8–10, 12. Plaintiff alleges that "[o]n December 9, 2021, [she] texted 'STOP' and 'UNSUBSCRIBE'" to stop the texts, but continued to receive them, *id.* ¶ 9, that "[o]n January 26, 2023, [she] called MHC and advised MHC that (1) she was receiving calls on her cellular telephone number for someone that was not her, (2) she had never used any Molina services, and (3) she resided in Oregon, not California[,]" *id.* ¶ 10;

Page 2 – OPINION & ORDER

First Kruzel Decl. ¶ 9, and that "[o]n April 28, 2023, Plaintiff sent a letter to MHC demanding that the calls stop, and again advising MHC that (1) it had been calling the wrong number, (2) that she had no relationship with Defendants, and (3) that she was considering filing a lawsuit in Oregon small claims court[,]" *Id.* ¶ 12; First Kruzel Decl. ¶¶ 13–15; *see also* Ex. A, ECF No. 47. Plaintiff attests that "even after calling and writing, [she] received additional calls about Molina's 'Wellness Rewards' program on June 27, 2023 and June 30, 2023." First Kruzel Decl. ¶ 16.

Plaintiff initiated this lawsuit on August 14, 2023. ECF No. 1. She alleges that "on September 11, 2024, Defendants delivered a text message to Plaintiff's cellular telephone number while she was in Oregon with actual knowledge she was in Oregon." SAC ¶ 18; *see also* First Kruzel Supp. Decl. ¶¶ 7–8, ECF No. 67-1. Plaintiff's counsel alerted Defendants about the September 11, 2024, communication and "asked that Defendants cease communications with Plaintiff." SAC ¶ 19. Plaintiff alleges that even after this, she received two more artificial or prerecorded voice calls from Defendants, the most recent on May 19, 2025. *Id.* ¶¶ 20–21; Second Kruzel Supp. Decl. ¶¶ 9–11, ECF No. 70-1.

Plaintiff alleges that the subject calls made to her telephone number "used artificial or prerecorded voice messages . . . for non-emergency purposes[,]" SAC ¶¶ 83–85; that she did not ever provide her telephone number to Defendants or to their telephone vendors; and that she did not consent to the calls. *Id.* ¶¶ 75–78, 79–82. Plaintiff further alleges that she did not ever have an account with Defendants

Page 3 – OPINION & ORDER

or their telephone vendors and that she is not and never has been a customer or accountholder with Defendants or their telephone vendors. *Id.* ¶¶ 67–74.

## PROCEDURAL POSTURE

Plaintiff initiated the case against MHI on August 14, 2023. On February 13, 2024, Plaintiff amended her complaint to add Defendant MHC. *See* FAC, ECF No. 31. MHI and MHC then filed a combined motion to dismiss for lack of personal jurisdiction. *See* Def. Mot., ECF No. 38. Plaintiff requested leave to conduct jurisdictional discovery, which the Court initially denied. *See* Opinion & Order, ECF No. 59. Plaintiff then submitted two requests for leave to file supplemental declarations about another text and another call she received from Defendants after initiating this suit. *See* Pl. Mots., ECF Nos. 67 and 70. After reviewing the parties' filings, the Court determined that jurisdictional discovery was appropriate. Accordingly, the Court stayed Defendants' motion and granted Plaintiff leave to conduct jurisdictional discovery. *See* Order, ECF No. 72. After the parties completed discovery, the Court granted the parties leave to amend their pleadings and refile their motions.

## LEGAL STANDARD

When faced with a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). But where, as here, the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need

only make a *prima facie* showing of the jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Uncontroverted allegations in the plaintiff's complaint must be taken as true[,]" and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* at 1015; *see also Oregon Int'l Airfreight Co. v. Bassano*, No. 3:21-cv-01480-SB, 2022 WL 2068755, at *3 (D. Or. May 16, 2022) ("[T]he Court must resolve any conflicts over statements contained in declarations in the plaintiff's favor[.]").

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot*, 780 F.3d at 1211. Oregon's long-arm statute is co-extensive with federal constitutional standards, so this Court need only determine whether its exercise of personal jurisdiction is consistent with constitutional due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990); Or. R. Civ. P. 4L; *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982). A federal court's exercise of personal jurisdiction satisfies due process where a defendant has "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Courts recognize two forms of personal jurisdiction: (1) general or "all-purpose" personal jurisdiction and (2) specific or "case-linked" personal jurisdiction. *Great W. Capital, LLC v. Payne*, No. 3:22-cv-00768-IM, 2023 WL 8600536, at *3 (D. Or. Nov. 28, 2023) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). "Unless a defendant's contacts with a forum are so substantial,

continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

## DISCUSSION

Plaintiff, an Oregon resident, alleges TCPA violations by Defendants MHI and MHC. *See* SAC. Under the TCPA, it is "unlawful for any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[,]" absent emergency purpose or prior express consent. 47 U.S.C. 227(b)(1).

Parent company MHI moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The parties agree that MHI is not subject to general personal jurisdiction in Oregon and that only specific jurisdiction is at issue. Subsidiary MHC does not dispute that it is subject to specific personal jurisdiction in Oregon.

I.  *Plaintiff's Motions to File Supplemental Declarations*

Plaintiff requests leave to file supplemental declarations to introduce evidence of "an unsolicited text message[,]" Pl. First Mot. at 1, ECF No. 67; Kruzel Supp. Decl. #1 ¶¶7–8, and "another [unsolicited] artificial or prerecorded voicemail[,]" Pl. Second Mot. at 2, ECF No. 70; Second Kruzel Supp. Decl. ¶¶10–12, that she received about Defendants' member rewards program more than a year into this case.

Defendants oppose Plaintiff's motions on the grounds that "personal jurisdiction depends upon contact with the forum state at the time of the Complaint" and that "the Supplement's asserted contact happened much later than the Complaint or its alleged events . . . [and] is therefore irrelevant to personal jurisdiction." Combined Molina Def. Resp. at 2–3, ECF No. 68; Combined Molina Def. Resp. at 3–4, ECF No. 71.

To support their assertion, Defendants cite, among other cases, *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d. 911 (9th Cir. 1990) and *Steel v. United States*, 813 F.2d 1545 (9th Cir. 1987). But these cases do not support Defendants' assertion that personal jurisdiction depends on the contacts that existed at the time of the complaint. Instead, they hold that personal jurisdiction depends on the contacts that existed at the time of the event that gave rise to the claim: "Only contacts occurring prior to the event causing the litigation may be considered." *Farmers Ins. Exchange*, 907 F.2d at 913. "When a court is exercising specific jurisdiction over a defendant, arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." *Steel*, 813 F.2d at 1549 (internal citation and quotation marks omitted); *see also Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) ("In the Ninth Circuit, we measure the extent of a defendant's contacts with a forum at the time of the events underlying the dispute.") (internal quotation marks and citation omitted).

Page 7 – OPINION & ORDER

Further, unlike here, Defendants' cases, almost all of which are insurance cases, involved a single "event" that gave rise to the litigation. But, here, Plaintiff alleges continuing TCPA violations and amended her complaint to include three of them. SAC ¶¶ 18, 19, 20–21. Each new violation is an event that gives rise to an additional claim. *See* 47 U.S.C. § 227(b)(3) (providing a private right of action to seek injunctive relief and actual damages or statutory damages of up to $500 per unlawful automated call or more "[i]f the court finds that the defendant willfully or knowingly violated [the statute]").

Accordingly, for each of the newly alleged TCPA violations—the ones that occurred after Plaintiff initiated this suit—the Court must consider, as to each violation, the contacts that existed at the time of that violation. For this reason, the Court grants Plaintiff's Motions, ECF Nos. 67 and 70.

II.     *MHI's Motion to Dismiss for Lack of Personal Jurisdiction*

Specific or case-linked jurisdiction "focuses on the relationship[s] among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The Ninth Circuit uses a three-prong analysis to determine whether a non-forum defendant has sufficient contacts with the forum state to justify the exercise of specific jurisdiction:

1. [for cases sounding in tort,] the defendant must "purposefully direct [its] activities or consummate some transaction with the forum or resident thereof;"

2. the claim must "arise[ ] out of or relate[] to the defendant's forum-related activities;" and

    3. "the exercise of jurisdiction must . . . be reasonable."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs. *Id.* If the plaintiff succeeds on the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

    Defendant MHI asserts that it is not subject to specific personal jurisdiction in Oregon because "(i) MHI did not purposefully direct its activities toward Oregon—MHI had no role in making, directing, or controlling the alleged calls—and (ii) Plaintiff's claims do not 'arise out' of or 'relate to' MHI's Oregon contacts." Def. Mot. at 3. MHI argues that Plaintiff cannot satisfy the first two prongs of the Ninth Circuit's specific jurisdiction analysis.

    A.    *Purposeful Direction*

    To show purposeful direction, the first prong of the Ninth Circuit's specific jurisdiction analysis, a plaintiff must satisfy the three-part *Calder* effects test. *Schwarzenegger*, 374 F.3d at 805. The *Calder* test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc.*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803). Under the *Calder* test, the plaintiff must show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805.

Page 9 – OPINION & ORDER

1.   *Intentional Act*

Under *Calder* part one Plaintiff must show that Defendant "committed an intentional act." *Id.* at 806. Plaintiff argues that "MHI undertook an intentional act by contracting with Icario to place artificial and prerecorded voice calls concerning Defendants' Wellness Rewards Program." Pl. Resp. at 7, ECF No. 92.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd but criticized on other grounds,* 577 U.S. 153, 163 (2016), *as revised* (Feb. 9, 2016). "Courts in the Ninth Circuit rely on the Restatement (Third) of Agency ("Restatement") for common law agency principles." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019). "A [TCPA] plaintiff can establish an agency relationship using the bedrock theories of agency, including actual authority, apparent authority, and ratification." *Williams v. PillPack LLC*, 644 F. Supp. 3d 845, 851 (W.D. Wash. 2022) (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018)); *see also Henderson*, 918 F.3d at 1073 (explaining, in a TCPA case, that "there are several ways to establish an agency relationship, including actual authority and ratification.") (citing Restatement §§ 2.01, 4.01).

"An agent's actual authority originates with expressive conduct by the principal toward the agent by which the principal manifests assent to action by the agent with legal consequences for the principal." Restatement § 3.01, comment b.

But "[a] key principle of any agency relationship is control, especially when determining whether vicarious liability exists." *Williams*, 644 F. Supp 3d at 851–52 (citing *Jones*, 887 F.3d at 450). "A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and the agent's conduct is tortious[.]" Restatement § 7.04.

Plaintiff offers two Agreements to show that MHI contracted with Icario (or its predecessor entity, NovuHealth, referred to here as "Icario") to place the subject calls: the "Master Services and Subscription Agreement" ("MSSA"), dated August 30, 2019, Davidson Decl. at 7, Ex. 2, ECF No. 93, and the "Statement of Work Agreement #9" ("SOW #9"), dated April 26, 2021, *id.* at 98, Ex. 4, (collectively, the "Agreements").

The MSSA, to which MHI is the sole Molina signatory, provides that (1) "Services to be performed by [Icario] will be set forth in . . . written statements of work signed by the parties . . . (SOWs)," MSSA § 2.0; (2) "Client will pay to [Icario] the Fees and Reward Amounts specified in an SOW[,]" § 6.1; (3) "Client will [timely] provide [Icario] with such direction, approvals, and decisions as requested by [Icario] in connection with this Agreement[,]" § 5.1; (4) "Client will . . . provide [Icario] with . . . Client Information as requested by [Icario]," § 5.2; (5) "Client has sole responsibility for the accuracy, quality, integrity, legality and reliability of the Client Information," *id.*; (6) "[Icario] will comply with . . . the Telephone Consumer Protection Act (TCPA), Do Not Call . . . and all applicable Laws.  [Icario] agrees not to make any future calls to a member after [Icario] receives such member's revocation of consent[,]" § 4.5.

Page 11 – OPINION & ORDER

The SOW #9, to which MHI is the sole Molina signatory, provides that (1) "[Icario] will design and manage an annual membership engagement program for Client using rewards and incentives to motivate Targeted Members . . . (the 'Rewards Program')[,]" SOW #9 § 2.0; (2) "The Rewards Program will permit Targeted Members to interact through . . . communication channels [including] . . . by phone through a call center, short message service (SMS) or text, and interactive voice response (IVR)[,]" § 4.3; (3) "[Icario] will not send any communication to Eligible Members unless the content has been approved by the Client[,]" § 4.4; (4) "Client will [timely] provide [Icario] with such direction, approvals, or decisions as requested[,]" § 5.3; (5) "On a monthly basis . . . , Client will provide [Icario] with a complete and accurate Eligibility File[,]" § 5.1; (6) "For each Program Year, Client will pay [Icario] a fee equal to the greater of (i) $95,000 (the 'Minimum Fee') or (ii) [a fee pegged to the percentage of Targeted Members who respond,]" § 8.1(a)-(c); SOW #9's Ex. E at 11–12.

MHI does not dispute that "MHI entered into [Agreements] with Icario, Inc. or its predecessor . . . on behalf of itself and its subsidiaries[.]" Desta Decl. ¶ 6. But MHI argues that Plaintiff fails to meet the "purposeful availment" requirement because a "contract alone does not automatically establish minimum contacts in the plaintiff's home forum. . . . Rather, there must be actions by the defendant *himself* that create a substantial connection with the forum State." Def. Reply at 3, ECF No. 96 (quoting *Picot*, 780 F.3d at 1212) (emphasis in *Picot*) (internal citations and quotation marks omitted).

Page 12 – OPINION & ORDER

Defendant misunderstands Plaintiff's theory of the case. Plaintiff's claim does not arise out of the contracts, it arises out of the allegedly tortious TCPA violations. Plaintiff offers the Agreements to support her theory that Icario acted as MHI's agent when it placed the artificial or prerecorded voice message calls at issue. "Even where a party did not itself make a call, it may be held vicariously liable for TCPA-violating calls 'where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller.'" *Brumfield v. All Web Leads Inc.*, No. 5:24-CV-00038-MRA-SHK, 2025 WL 2074361, at *4 (C.D. Cal. Mar. 28, 2025) (quoting *Gomez*, 768 F.3d at 879); *see also Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (collecting cases).

Defendants assert that "the MSSA itself disclaims any agency relationship, confirming that Icario acted solely as independent contractor." Def. Reply at 5. The MSSA, § 15.1 provides: "The relationship between [Icario] and Client is that of independent contractors. Nothing in this Agreement will be construed as creating an agency relationship[.]" MSSA, Davidson Decl. Ex. 2. The Ninth Circuit has held, specifically in a TCPA case, that "[w]hether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship." *Henderson*, 918 F.3d at 1072–73 (citing Restatement § 1.02). And where parties define themselves as independent contractors "it is appropriate to consider whether the parties are trying to limit or prevent liability by characterizing their relationship as something other than an agency relationship." *Id.* at 1072.

Page 13 – OPINION & ORDER

MHI also argues that "Icario . . . did not act under MHI's direction or control[,]" Def. Mot. at 10, and that "MHI did not provide Icario with [Plaintiff's telephone number]" or "with MHC's members' contact information to target in member-outreach campaigns[,]" Desta Decl. ¶ 6. MHI's statements directly contradict the terms of the MSSA and SOW #9. But the Court need not resolve the parties' factual dispute because Plaintiff is required only to make a *prima facie* showing of the jurisdictional facts. *Boschetto*, 539 F.3d at 1015. And "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

Accordingly, the Court concludes that Plaintiff has made a *prima facie* showing that MHI "committed an intentional act" when it by contracted with Icario to place artificial and prerecorded voice message calls for Defendants' member rewards program.

### 2. *Expressly aimed at the forum state*

Under *Calder* part two, Plaintiff must show that MHI aimed its intentional act—the placement of the subject calls—at Oregon. *Schwarzenegger*, 374 F.3d at 806. Express aiming "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal citation and quotation marks omitted). Express aiming is also satisfied "[w]here [defendant] knew *or should have known* that [plaintiff] is a [forum resident.]" *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012) (emphasis added).

MHI asserts that it "has no records linking Plaintiff or [her phone number] to Oregon." Def. Mot. at 10. MHI relies on *Nichols v. 360 Ins. Grp. LLC*, No. 22-CV-03899-RS, 2023 WL 163201, at *5–6 (N.D. Cal. Jan. 11, 2023) for the proposition that a defendant who "lack[s] knowledge that conduct targeted the forum state because plaintiff's phone number began with a non-forum area code" has not expressly aimed at the forum state. Def. Mot. at 10.

Plaintiff responds that "the *Calder* [express aiming requirement] is satisfied when [TCPA] defendants have indicia suggesting a called party is located within a state, even if the defendants do not have actual knowledge that the called party resides in that state." Pl. Resp. at 10 (citing collected cases including *Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019)). Plaintiff's cases do not conflict with *Nichols*, cited by Defendant. In Plaintiff's cases the "indicia" indicating that the called party was located in the forum state was Plaintiff's forum state area code. Here, however, Oregon Plaintiff has a California area code. But Plaintiff further argues that "MHI had more than mere indicia—it had actual knowledge that [Plaintiff] lived in Oregon." Pl. Resp. at 11. Plaintiff attests that she called and emailed MHC, informed MHC she lived in Oregon, and instructed them to stop the calls. Even assuming that MHC did not actually communicate or was not obligated to communicate that information to MHI—the sole Molina signatory on the Icario contract, MHI acquired *actual knowledge* that the subject calls were being directed into Oregon during this litigation. And even then—

a year into litigation—Plaintiff received another Molina text and two more Molina calls.

The Court concludes that Plaintiff has made a *prima facie* showing that MHI expressly aimed the subject calls at Plaintiff, an Oregon resident, because MHI allowed the calls to be made by its vendor even after acquiring actual knowledge that the vendor was calling Plaintiff in Oregon.

### 3. *Causation*

Under *Calder* part three, Plaintiff must show that MHI's intentional act caused harm that MHI knew was likely to be suffered in Oregon. *Schwarzenegger*, 374 F.3d at 806. The parties do not dispute that the harm resulting from the alleged TCPA violations was suffered by Plaintiff in Oregon. Because Defendant knew or should have known that Plaintiff was receiving the subject calls in Oregon, it knew or should have known that harm was likely to be suffered in Oregon. The Court concludes that Plaintiff has made a *prima facie* showing that MHI caused harm that it knew was likely to be suffered in Oregon.

In sum, the Court concludes that Plaintiff has made a *prima facie* showing that MHI purposefully directed the subject calls into Oregon. Plaintiff thus satisfies the first prong of the specific jurisdiction analysis.

### B. *Arising Out of Forum-Related Activities*

As to the second prong of the Ninth Circuit's specific jurisdiction analysis, Plaintiff must show that her TCPA claim "arises out of or relates to" MHI's Oregon activities. *Schwarzenegger*, 374 F.3d at 802. "The first half of that standard asks

Page 16 – OPINION & ORDER

about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co.*, 592 U.S. at 362.

MHI argues that the claim does not arise out of MHI's Oregon contacts because the subject "phone calls and text messages were sent by third parties, [that] are not the defendant's forum contacts." Def. Mot. at 12. But the Agreements between sole Molina signatory MHI and Icario show that MHI contracted with Icario to place the subject calls, that MHI was to supply the member lists to Icario, and that MHI was responsible for "the accuracy, quality, integrity, legality and reliability" of those lists. Because Plaintiff received artificial and prerecorded voice calls about Defendants' member rewards program, the Court can infer that Plaintiff's phone number was on the lists that were supplied to Icario. Further, SOW #9 expressly authorized Icario to make interactive voice response calls, which violates the TCPA's bar on using any automatic telephone dialing system or artificial or prerecorded voice calls. 47 U.S.C. 227(b)(1)(A). Plaintiff's claim arises from the artificial and prerecorded voice calls about Defendants' member rewards program that she received.

The Court concludes that Plaintiff has made a *prima facie* showing that her TCPA claim arises out of or relates to MHI's contacts with Oregon. Plaintiff thus satisfies the second prong of the specific jurisdiction analysis.

C.   *Reasonableness*

As to the third prong of the Ninth Circuit's specific jurisdiction analysis, the burden "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.

Page 17 – OPINION & ORDER

To determine whether the exercise of jurisdiction comports with "fair play and substantial justice," *i.e.*, is "reasonable," the Ninth Circuit considers seven factors:

(1) the extent of the defendants' purposeful injection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum;
(3) the extent of conflict with the sovereignty of the defendant's state;
(4) the forum state's interest in adjudicating the dispute;
(5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7) the existence of an alternative forum.

*Dole Food Co.*, 303 F.3d at 1114.

Defendant does not argue that jurisdiction in Oregon would be unreasonable. The Court's review of the seven factors shows that jurisdiction in Oregon is not unreasonable.

1.   If a court determines that a defendant has purposefully directed its actions at the forum state, as discussed above, then the purposeful injection factor favors the plaintiff. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (citation omitted). This factor favors jurisdiction in Oregon.

2.   Although MHI resides in other states, given the advances in transportation and electronic communications and given that Defendant is a well-resourced corporation and has retained local counsel, Defendant's burden is not great. *See Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) ("[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past.").

Page 18 – OPINION & ORDER

3.      There is no conflict with the sovereignty of Delaware or California, MHI's states of residence because the TCPA is a federal law and the federal analysis would be the same in any state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). This factor favors jurisdiction in Oregon.

4.      A forum state "maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Gordy v. Daily News, L.P.,* 95 F.3d 829, 836 (9th Cir. 1996). This factor favors jurisdiction in Oregon.

5.      Efficient judicial resolution depends "on the location of the evidence and witnesses." *Panavision Int'l*, 141 F.3d at 1323. But this factor "is no longer weighed heavily given the modern advances in communication and transportation." *Id.* This factor is neutral.

6.      Plaintiff will be burdened by litigating this case outside of Oregon, but "in this circuit, the plaintiff's convenience is not of paramount importance." *Dole Food Co.*, 303 F.3d at 1116. This factor is neutral.

7.      MHI has not shown that Oregon is an unreasonable forum. "Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource, Inc.*, 653 F.3d at 1080. This factor favors jurisdiction in Oregon.

Finally, the Court must "balance" the factors to determine whether defendant makes a compelling case that litigating in Oregon is unreasonable. *Dole Food Co.*, 303 F.3d at 1117 (Defendants have a "heavy burden . . . to prov[e] a 'compelling case' of unreasonableness to defeat jurisdiction."). Even when the factors are close, the

Ninth Circuit has not found unreasonableness. *See, e.g., Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) (where the factors were evenly split between the parties, defendant did not "present[] a 'compelling case' that exercising jurisdiction over it would be unreasonable"). Here, four factors favor jurisdiction in Oregon; the rest are neutral, which is insufficient to show that litigating this case in Oregon is unreasonable.

In sum, Plaintiff has satisfied the first two prongs of the Ninth Circuit's specific jurisdiction analysis, and Defendant has not shown that litigating in Oregon would be unreasonable. Plaintiff has made a *prima facie* case that MHI is subject to specific personal jurisdiction in Oregon. Accordingly, the Court denies MHI's Motion to Dismiss.

## CONCLUSION

For the reasons explained above, the Court GRANTS Plaintiff's Motions, ECF Nos. 67 and 70, and DENIES Defendant MHI's Motion, ECF No. 86.

It is so ORDERED and DATED this  18th  day of August 2025.

      /s/Ann Aiken
      ANN AIKEN
      United States District Judge