IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MELISSA KRUZEL,

        Plaintiff,

    v.

MOLINA HEALTHCARE, INC.;
MOLINA HEALTHCARE OF CALIFORNIA,

        Defendants.

Civ. No. 6:23-cv-01183-AA

**OPINION & ORDER**

AIKEN, District Judge.

In this putative class action, Plaintiff Melissa Kruzel ("Ms. Kruzel" or "Plaintiff"), on behalf of herself and others, alleges that Defendants Molina Healthcare, Inc. ("MHI") and Molina Healthcare of California ("MHC") (collectively "Defendants") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing artificial or prerecorded non-emergency voice calls absent prior express consent. Before the Court is Plaintiff's unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 105. For the reasons explained below, the Motion, ECF No. 105, is GRANTED.

## BACKGROUND

Plaintiff alleges that, since early 2021, she has received at least thirty calls to her telephone number about Defendants' Wellness Rewards Program, Second Am. Compl. ("SAC") ¶¶ 42–43, 47–51, ECF No. 84, "intended for someone other than

Page 1 – OPINION & ORDER

[her,]" First Kruzel Decl. ¶¶ 5, 11, 16, ECF No. 47; Second Kruzel Supp. Decl. ¶¶ 9–11, ECF No. 70-1, at least seven of which were artificial or prerecorded voice messages, SAC ¶¶ 47–51, 56, 61, many identical and repetitive, *id.* ¶¶ 47–51, 56, 61, and made for non-emergency purposes[,]" *id.* ¶ 83. Plaintiff affirms that she did not ever have an account with Defendants or their telephone vendors and that she is not and never has been a customer or accountholder with Defendants or their telephone vendors. SAC ¶¶ 67–74; First Kruzel Decl. ¶ 9.

## PROCEDURAL POSTURE

On August 14, 2023, Plaintiff commenced this action against MHI. *See* Compl., ECF No. 1. On February 13, 2024, Plaintiff amended her Complaint to add Defendant MHC. *See* FAC, ECF No. 31. On June 30, 2025, MHI moved to dismiss for lack of personal jurisdiction. *See* Def. Mot., ECF No. 86. The Court denied the motion. *See* Opinion & Order, ECF No. 97. On December 31, 2025, the parties filed a Joint Notice of Settlement, ECF No. 103. Plaintiff now files a Motion for Preliminary Approval of Class Action Settlement. Defendants do not oppose the motion.

## LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement

"is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "District courts must be skeptical of some settlement agreements put before them because they are presented with a 'bargain proffered for . . . approval without benefit of an adversarial investigation.'" *Id.* at 1021 (quoting *Amchem Prods. Inc.*, 521 U.S. at 593). Finally, after the court grants preliminary approval and after notice is given to class members, the court then determines whether final approval is warranted. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## DISCUSSION

I.    *Conditional Class Certification*

For settlement purposes, Plaintiff requests conditional certification of the following class:

> All persons throughout the United States (1) to whom Molina Healthcare, Inc. or Molina Healthcare of California placed, or Icario, Inc. placed on behalf of Molina Healthcare, Inc. or Molina Healthcare of California, a call, (2) directed to a number assigned to a cellular telephone, but not assigned to a person who has or had an account or plan with Molina Healthcare, Inc. or Molina Healthcare of California, (3) which Molina Healthcare, Inc., Molina Healthcare of California or Icario, Inc. dispositioned as Wrong Number in its records and is one of the numbers that appears in either MOLINA_006055 or ICARIO000017 (4) in connection with which Molina Healthcare, Inc., or Molina Healthcare of California or Icario, Inc. used an artificial or prerecorded voice, (5) from May 30, 2021 through the date of preliminary approval.

Pl. Mot. at 1.

To certify a class under Federal Rule of Civil Procedure 23, a plaintiff must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule

23(a) and must show that Rule 23(b) provides a basis for certifying the proposed class. Fed. R. Civ. P. 23(a)&(b).

> A.    *Rule 23(a)*

Rule 23(a) sets out four prerequisites to certify a class. Plaintiff meets all of them.

> 1.    *Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Though numerosity does not require a specific number of class members, as a rough rule of thumb, approximately forty members is sufficient. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013).

Plaintiff contends that "Defendants delivered, or caused to be delivered, artificial or prerecorded voice messages to 18,794 telephone numbers assigned to a cellular telephone service, where the recipients of the artificial or prerecorded voice messages are alleged to have not had an account or plan with Defendants (*i.e.*, they were allegedly wrong numbers)." Pl. Mot. at 5. Even if only a fraction of settlement class members opt in to the settlement, the class will be too numerous to practicably join all members. The numerosity requirement is met.

> 2.    *Commonality*

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The plaintiff must show that class members have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal citation and quotation marks omitted). The threshold

Page 4 – OPINION & ORDER

requirement of commonality is not high. *Giles*, 294 F.R.D. at 590. Class members need not have every issue in common—only a single significant question of law or fact. *Chastain v. Cam*, No. 3:13-CV-01802-SI, 2016 WL 1572542, at *6 (D. Or. Apr. 19, 2016).

Here, Plaintiff contends that the putative class members have in common three significant issues of law and fact: (1) whether Defendants used, or caused to be used, an artificial or prerecorded voice to make non-emergency calls absent prior express consent to each putative class member; (2) whether each putative class member suffered the same injury—a receipt of at least one call made by Defendants in violation of the TCPA; and (3) whether liability attaches to wrong number calls made by Defendants. Pl. Mot. at 7.

The Court concludes that questions of law and fact are common to all members of the settlement class. The commonality requirement is met.

### 3.    *Typicality*

Rule 23(a)(3) requires that the representative party's claim be "typical of the claim[] . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is met where a plaintiff's claims "arise from the same remedial and legal theories" as the class claims. *Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994). "The test of typicality is whether other members have the same or similar injury, whether the action is based on

Page 5 – OPINION & ORDER

conduct [that] is not unique to the named Plaintiffs, and whether the other class members have been injured by the same court of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation marks omitted).

Plaintiff maintains that her claims are typical of those of the settlement class members. Pl. Mot. at 7. Plaintiff contends that she and the other class members suffered the same injury of having "receiv[ed] artificial or prerecorded voice messages on their cellular telephones while not being plan holders or accountholders of Defendants[]" and that the calls that she and other class members received were wrong number calls. *Id.* at 7–8. The Court concludes that Plaintiff suffered the same injury, possesses the same interests, and seeks the same relief as other settlement class members. For that reason, her claims are typical of those of the settlement class. The typicality requirement is met.

### 4. *Adequacy*

Rule 23(a)(4) requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether a class representative fairly and adequate protects the interests of the class, a court must answer two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class[.]" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives

Page 6 – OPINION & ORDER

and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Plaintiff contends that she "ha[s] protected, and will continue to protect the interests of settlement class members" in this case. Kruzel Second Decl. ¶ 14, ECF No. 107. Ms. Kruzel affirms that she has been heavily involved in this matter since she initiated it, *id.* ¶¶ 7–16, that she has communicated regularly with her counsel, *id.* ¶ 16, that she attended both mediations[,] *id.* ¶ 12, and that she "ha[s] made, and [is] prepared to make, all necessary decisions involving this matter with settlement class members' best interests in mind[,]" *id.* ¶ 15.

Plaintiff is represented by James L. Davidson of Greenwald Davidson Radbil PLLC and by Max S. Morgan of The Weitz Firm, LLC. Plaintiff contends that counsel are "experienced and competent" in TCPA class action litigation. *Id.* ¶¶ 8, 9; *see also* Davidson Decl. ¶¶ 6–18, ECF No. 106 (listing 33 TCPA class actions that counsel has litigated and providing judicial statements on the expertise and skill that counsel has demonstrated in prior TCPA cases); Morgan Decl. ¶¶ 7, 8, ECF No. 108 (listing TCPA class actions that counsel has litigated). Counsel affirm that they have no known conflicts with the proposed settlement class. Davidson Decl. ¶ 37; Morgan Decl. ¶ 18.

The record contains no evidence that Ms. Kruzel or counsel have a conflict of interest with the other settlement class members. Ms. Kruzel shares a common claim and seeks the same relief as the other settlement class members. She initiated this action and has been actively involved from the start. The Court concludes that she will continue to pursue this matter vigorously on behalf of the class. Given counsel's

Page 7 – OPINION & ORDER

qualifications, experience, and skill, the Court concludes that counsel will continue to pursue this action vigorously on behalf of the class. For these reasons, the Court concludes that Ms. Kruzel and her counsel will fairly and adequately protect the settlement class members' interests. The adequacy requirement is met.

B.    *Rule 23(b)*

Under Rule 23(b), a plaintiff must show that the action meets one of the bases for class certification. Here, Plaintiff relies on Rule 23(b)(3). Pl. Mot. at 7. Rule 23(b)(3) requires Plaintiff to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Underlying both tests is a concern for judicial economy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). Plaintiff meets the requirements of Rule 23(b)(3).

1.    *Predominance*

The "predominance inquiry focuses on the relationship between the common and individual issues and tests whether [a] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal citation and quotation marks omitted).

Here, the TCPA prohibits, absent prior express consent, calls made using "an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A). The predominate question of law common to all class members is whether Defendants used an artificial or prerecorded voice to make unsolicited calls to class members in violation of the TCPA.

Plaintiff contends that individual issues of prior express consent do not arise because class members have no relationship with Defendants. Pl. Mot. at 10. Plaintiff also contends that individual issues related to incorrect "wrong number" notations in Defendants' database do not defeat class cohesion. Plaintiff maintains that even where "a substantial proportion of the phone numbers marked as 'wrong number . . . may not have actually been a wrong number[,]'" courts have held that the issue can be handled within the class action framework. *Id.* at 10–11 (quoting *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *8 (D.N.M. June 5, 2018) and collecting cases). The Court has reviewed the reasoning in similar prior TCPA class actions and finds it persuasive.

Accordingly, the Court concludes that questions of law and fact common to settlement class members predominate over any questions affecting only individual members. The predominance test is met.

### 2. *Superiority*

The superiority inquiry asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Further, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175.

Under the TCPA, a class member's potential recovery per violation is the greater of actual monetary loss or $500. *See* 47 U.S.C. § 227(b)(3). Because the cost of individual litigation greatly exceeds any potential individual recovery, there is little incentive for an individual plaintiff to bring their own action. For that reason, Plaintiff contends that "absent a class action, thousands of claims like Ms. Kruzel's will likely go unredressed." Pl. Mot. at 12. Further, "resolution of the issues on a classwide basis, rather than in thousands [of] individual lawsuits is an efficient use of judicial resources." *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009).

For these reasons, the Court concludes that a class action is superior to other available methods for the fair and efficient adjudication of this matter. The superiority test is met.

In sum, Plaintiff meets the requirements of Rule 23(a) and Rule 23(b)(3). Accordingly, the Court GRANTS Plaintiff's motion to conditionally certify the settlement class.

II.    *Appointment of Class Representative and Class Counsel*

Ms. Kruzel is appointed class representative because she meets the commonality, typicality, and adequacy requirements of Rule 23(a) and has already committed significant time and resources to this action.

As to appointing class counsel, a court considers:

(i) the work counsel has done in identifying or investigating potential claims in the action;

Page 10 – OPINION & ORDER

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Class counsel have litigated this action for two years and engaged in two mediation settlements with a neutral third-party mediator. Davidson Decl. ¶¶ 44, 45; Morgan Decl. ¶¶ 26, 27. As reviewed above, counsel have litigated more than 30 TCPA class actions and many other consumer protection class actions and have extensive knowledge of the applicable law. Counsel have already committed substantial resources to identifying the potential class and to representing class interests. *See* Davidson Decl. ¶¶ 35, 36 (affirming that counsel have "advanced all costs necessary to prosecute this action" and have "devoted significant time to this case"). Counsel affirm that they have no known conflicts with the proposed settlement class. Davidson Decl. ¶ 37; Morgan Decl. ¶ 18. Based on counsel's performance here and counsel's track record, the Court concludes that counsel will continue to commit substantial resources to representing the class. Accordingly, James L. Davidson of Greenwald Davidson Radbil PLLC and Max S. Morgan of The Weitz Firm, LLC are appointed class counsel.

III.    *Preliminary Fairness Determination*

A.    *The Settlement's Terms*

The Settlement Agreement (the "Agreement"), Davidson Decl., Ex. A, Agreement, ECF No. 106 at 12, contains the following terms:

> **The fund.** Within thirty days of the date that this Court approves the settlement agreement, (the "Preliminary Approval Date"), Defendants

will create a non-reversionary common fund in the amount of $1,927,500. Agreement §§ 11.1–11.8.

From the fund, the following will be deducted: "(1) Costs and expenses of administrating the Settlement, including notice to potential Settlement Class Members; (2) Class Counsel's attorneys' fees, subject to the Court's approval, for which Class Counsel will petition the Court; (3) Class Counsel's litigation costs and expenses not to exceed $35,000, subject to the Court's approval, for which Class Counsel will petition the Court; and (4) Plaintiff's incentive award, subject to the Court's approval, for which Class Counsel will petition the Court." *Id.* §§ 11.5, 16.

After these deductions, class members with approved claims will each receive an equal share of the fund. Davidson Decl. ¶ 40; Ex. 1, Website Notice, ECF No. 106 at 41.

**Administrator.** The parties have selected Simpluris, Inc. ("Simpluris" or "Administrator") as administrator, subject to the Court's approval. Agreement § 2.15. The Administrator will receive payment from Defendants, establish a non-reversionary common fund, identify claimants, establish a dedicated website (the "Settlement Website"), disseminate class notice, process claims, and disseminate settlement benefits; and document Class Action Fairness Act ("CAFA") compliance. *See id.* §§ 6 (CAFA compliance); 7, 8 (identification & notice); 9 (website); 11 (approval); 20 (fund distribution).

**Notice to Potential Claimants.** No later than 30 days after the date of the Preliminary Approval Date, the Administrator will direct notice to potential class members. *Id.* §§ 7.5, 8.1. The Administrator will use reverse telephone number look up to identify potential class members. *Id.* § 7.2(C). The Administrator will send a postcard notice, subject to the Court's approval, with detachable claim form to all potential class members. *Id.* §§ 2.4, 7.1–7.12; Davidson Decl., Ex. 1, Postcard Notice, ECF No. 106 at 35. The Administrator will also publish a question-and-answer notice and online claim form, subject to the Court's approval, on the Settlement Website. *Id.* §§ 8.1–9.3; Ex. 1, Website Notice, ECF No. 106 at 38.

**Payment to Approved Claimants.** To receive payment, claimants must within 75 days of the date of the Preliminary Approval Date submit a claim form either by direct mail or electronically through the Settlement Website, and the claim must be approved by the Administrator. *Id.* §§ 7.1–7.12; 9.1–9.3; 11.4–11.8.

**Amount of Per Claimant Cash Payment.** The number of estimated potential claimants is 18,794. *Id.* § 4.2. Based on an estimate of "historical claim rates," Plaintiff's counsel estimates a cash payment of between $319 and $638 for each participating claimant after deducting the cost of notice to potential settlement class, members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Ms. Kruzel. Pl. Mot. at 17. The settlement fund is cash, with no coupon or voucher component. Agreement §§ 11.4–11.5. Davidson Decl. ¶ 42.

**Reasonable Attorneys' Fees.** Counsel will petition the Court for approval of reasonable attorneys' fees. Agreement §§ 11.4(D), 16. Reasonable attorneys' fees are to be calculated as a percentage of the settlement fund. The Agreement contains no clear sailing provision.

**Plaintiff's Incentive Award.** Plaintiff will petition the Court for approval of Plaintiff's incentive award. *Id.* §§ 11.4, 16.

**Opt Out to Preserve Claims.** Any settlement class member who wishes to opt out or be excluded from the settlement must provide written notice to the Administrator no later than 75 days from the Preliminary Approval Date. *Id.* §§ 12.1–12.6. Excluded class members will not be bound by the terms of the Agreement (including the release of their claims), nor will they receive any settlement benefits. *Id.* §§ 12.3, 14.

**Objections.** Class members who wish to object to the settlement and have an opportunity to be heard at the final fairness hearing must mail their objections to the Administrator no later than 75 days after the Preliminary Approval Date with details that are set out in the Agreement. *Id.* §§ 13.1–13.6.

B.    *Legal Standard*

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). But courts must determine whether a proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon,* 150 F.3d at 1026. To determine whether a proposed settlement is "fair, reasonable, and adequate," courts

Page 13 – OPINION & ORDER

Case 6:23-cv-01183-AA    Document 110    Filed 04/21/26    Page 14 of 22

consider the following *Hanlon* factors:  (1) strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement.  *Id.*  The list of factors is "by no means an exhaustive list of relevant considerations, nor ha[s] [the Ninth Circuit] attempted to identify the most significant factors"  *Staton*, 327 F.3d at 959 (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982)).

When examining a settlement for fairness, courts must take the settlement "as a whole, rather than the individual component parts[.]"  *Hanlon*, 150 F.3d at 1026. Courts do not have the ability to "delete, modify, or substitute certain provisions." *Id.* (quoting *Officers for Justice*, 688 F.2d at 630).  The  settlement "must stand or fall in its entirety."  *Id.*

The proposed settlement need not be ideal, but it must be "fair, adequate and free from collusion."  *Id.* at 1027.  Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).  Courts "must be particularly vigilant not only for explicit collusion,

Page 14 – OPINION & ORDER

but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

    C.    *Discussion*

The Court has reviewed the terms of the settlement and, for the reasons explained below, concludes that it is fair, reasonable, and adequate as required by Rule 23(e).

    1.    *Notice*

Rule 23(c)(2)(B) requires a court, upon preliminary approval of settlement, to "direct to class members the best notice . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(1) requires that reasonable notice be provided to all class members who would be bound by the proposed settlement.

Here, no later than 30 days after the Preliminary Approval Date, the Administrator will send court-approved notice to potential settlement class members by direct mail: post card with detachable claim form. The Administrator will also create a dedicated website that contains a court-approved question and answer notice, claim form, the operative complaint, and the settlement agreement. The notice instructs settlement class members that they have 75 days from the Preliminary Approval Date to submit a claim form or to exclude themselves from the settlement and how to do so. The notice also instructs settlement class members that

Page 15 – OPINION & ORDER

they have 75 days from the Preliminary Approval Date to file objections and how to do so.

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted). The Court concludes that the proposed notice by direct mail and by website is the best notice practicable under the circumstances as required under Rule 23(c)(2)(B) and constitutes due and sufficient notice to all persons and entities entitled to notice.

       2.    *Risk of Collusion*

Because the settlement was reached before class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement," and courts must examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest." *In re Bluetooth*, 654 F.3d at 946. Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision" for the payment of attorneys' fees; and (3) a provision that unawarded funds revert to defendant rather than to be added to the settlement fund. *Id.* at 947. If "multiple indicia of possible implicit collusion" are present, a district court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high.'" *Id.* (quoting *Staton*, 327 F.3d at 965).

Page 16 – OPINION & ORDER

As to the first *Bluetooth* factor, counsel's attorneys' fees have not yet been determined. The Agreement provides that counsel will petition the Court for attorneys' fees, which are subject to the Court's review and approval. As to the second *Bluetooth* factor, the Agreement contains no "clear sailing provision" for the payment of attorneys' fees. Defendants are free to object to class counsel's fee petition. And litigation costs are capped at $35,0000. As to the third *Bluetooth* factor, no unpaid funds will revert to Defendants. The Agreement provides that all settlement funds will be paid from a "non-reversionary" account created by Defendants. Any settlement funds that go uncashed will be distributed to the Lane County Legal Aid Office of Oregon Law Center via payment to the Campaign for Equal Justice, subject to the Court's approval. Agreement § 11.8.

The Court concludes that there are no *Bluetooth* indicia of collusion and that the risk of collusion is low. This factor favors preliminary approval of the settlement.

### 3. *Strength of Plaintiff's Case and Litigation Risks*

As explained above, the cost of individual TCPA litigation greatly exceeds any potential individual award of statutory damages. Plaintiff has already conducted two years of litigation with discovery, deposition, and motion practice. And although Plaintiff contends that her position has merit, Defendants dispute that common issues predominate over individual ones and deny that a litigation class properly could be certified on the claims asserted in the suit. *See* Agreement § 4.4. At trial, the outcome is uncertain and any award would be significantly delayed by trial and possible appeal. This factor favors preliminary approval of the settlement.

4.      *Settlement Amount*

If settlement class members were to prevail on their claims at trial, they would be entitled to the greater of actual monetary loss or $500 statutory damages per TCPA violation.  47 U.S.C. § 227(b)(3)(B).

Here, the settlement is approximately $102 cash payment per settlement class member.  Pl. Mot. at 16.  Plaintiff contends that $102 per settlement class member "compares very favorably with analogous settlements under the TCPA, all of which various district courts approved."  *Id.* (collecting cases from 2015 through 2023 with settlement amounts ranging from $2.95 to $90 per settlement class member).

Because class members must opt in to receive an award, counsel estimates that, "based on historical claims rates," each claimant would receive between $319 and $638, after deductions for administrative costs, litigation costs (capped at $35,000), reasonable attorneys' fees, and Ms. Kruzel's incentive award.  *Id.* at 17.  The estimated per claimant award is thus close to and possibly exceeds the $500 statutory recovery for a single TCPA violation.  And that award would be provided in cash and within weeks of submitting a claim.

Given the settlement as a whole and the relatively swift and direct cash award in light of the costs, risks and delay of trial and possible appeal, the settlement amount is reasonable and favors preliminary approval of the settlement.

5.      *Extent of Discovery and Stage of Litigation*

Plaintiff affirms that the parties reached settlement after two years of litigation that included written discovery, a deposition, significant motion practice,

and two mediations with the Hon. David E. Jones (Ret.). Davidson Decl. ¶¶ 44, 45. The settlement was negotiated at arm's length and the process permitted the parties to make an informed decision. This factor favors preliminary approval of the settlement.

### 6.    *Experience and Views of Class Counsel*

As noted above, class counsel have significant experience and skill in litigating TCPA class actions. This factor favors preliminary approval of the settlement.

### 7.    *Reaction of Class Members to the Proposed Settlement*

The Court has not yet heard from the class members. The Court will hear from the class members at the final fairness hearing and will consider all objections.

### 8.    *Preferential Treatment*

Rule 23(e)(2)(D) requires that a settlement treat all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, all settlement class members have the same claims. The settlement provides that each participating class member with a valid claim will receive an equal portion of the settlement fund. And the release affects each class member the same way.

Aside from a separate incentive award, Ms. Kruzel will receive the same award as the other settlement class members.  There is no evidence that any other settlement class member will receive preferential treatment.  This factor favors preliminary approval of the settlement.

> ### 9.    *Presence of Obvious Deficiencies*

The Court has reviewed the Agreement and finds no obvious deficiencies.  The Court will consider all objections and concerns at the final fairness hearing.

## CONCLUSION

For the reasons explained above, the Court concludes that the terms of the settlement are fair, reasonable, and adequate as required by Federal Rule of Civil Procedure 23(e). Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 105, is GRANTED. The Agreement's terms, including dates and deadlines, are preliminarily approved.

1. The proposed class is certified for settlement purposes only under Federal Rule of Civil Procedure 23(b)(3);

2. James L. Davidson of Greenwald Davidson Radbil PLLC and Max S. Morgan of The Weitz Firm, LLC are appointed class counsel for the settlement class for settlement purposes only;

3. Plaintiff Melissa Kruzel is appointed class representative for the settlement class for settlement purposes only;

4. The settlement notice method and content, as set forth in Agreement § 7 (method) and Davidson Decl., Ex. 1, ECF No. 106 at 35 and 38 (postcard and website content), are approved as constituting due and sufficient notice to all persons and entities entitled to notice as required under Rule 23(c)(2)(B);

5. The exclusion or opt out process, as stated in the Agreement § 12 is approved as fair and reasonable;

6. Simpluris. Inc. is appointed Settlement Administrator and is directed to carry out the duties and responsibilities of the Administrator as stated in the Agreement;

7. A final fairness hearing on the final approval of class action settlement shall be held by telephone before this Court on August 17, 2026 at 10:00 am.

Page 21 – OPINION & ORDER

8.    The Court sets the following schedule:

**April 21, 2026** - Order Preliminarily Approving the Settlement Entered

**May 21, 2026** - Defendants to fund Settlement Fund (thirty days after entry of Order Preliminarily Approving the Settlement)

**May 21, 2026** - Notice Sent (thirty days after entry of Order Preliminarily Approving the Settlement)

**June 5, 2026** - Attorneys' Fees Petition Filed (forty-five days after entry of Order Preliminarily Approving the Settlement)

**July 6, 2026** - Opposition to Attorneys' Fees Petition (seventy-five days after entry of Order Preliminarily Approving the Settlement)

**July 6, 2026** - Deadline to Submit Claims, Send Exclusion, or File Objection (seventy-five days after entry of Order Preliminarily Approving the Settlement)

**July 20, 2026** - Reply in Support of Attorneys' Fees Petition (fourteen days after the deadline for settlement class members to submit claims, object to, or exclude themselves from, the settlement)

**July 18, 2026** - Motion for Final Approval Filed (thirty days before final fairness hearing)

**August 3, 2026** - Opposition to Motion for Final Approval Filed (fourteen days before final fairness hearing)

**August 10, 2026** - Reply in support of Motion for Final Approval (seven days before final fairness hearing)

**August 7, 2026** - Class Administrator will provide a sworn declaration attesting to proper service of the Class Notice and Claim Forms, and state the number of claims, objections, and opt outs, if any (ten days before the final fairness hearing)

**August 17, 2026** - Final Fairness Hearing

It is so ORDERED and DATED this __21st__ day of April 2026.

 /s/Ann Aiken
ANN AIKEN
United States District Judge

Page 22 – OPINION & ORDER