IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MELISSA KRUZEL, on behalf of herself and others similarly situated,

Plaintiff,

v.

MOLINA HEALTHCARE, INC.; MOLINA HEALTHCARE OF CALIFORNIA,

Defendants.

Civ. No. 6:23-cv-01183-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Melissa Kruzel, on behalf of herself and all others similarly situated, moves for Final Approval of the Class Action Settlement and for attorneys' fees, costs, and an incentive award. ECF Nos. 114, 111. On August 17, 2026, the Court held a Fairness Hearing as required by Federal Rule of Civil Procedure 23(e)(2). For the reasons that follow, the Court GRANTS the Motion for Final Approval of the Class Action Settlement, ECF No. 114, and the Motion for attorneys' fees, costs, and a class representative incentive award, ECF No. 111.

**BACKGROUND**

The facts of the case are well known to the parties. On December 31, 2025, the parties filed a Joint Notice of Settlement, ECF No. 103.

On April 21, 2026, the Court issued an Order preliminarily certifying the Settlement Class, preliminarily approving the Settlement Agreement, and directing the dissemination of Class Notice. Opinion & Order at 21, 22, ECF No. 110. The Court appointed Plaintiff Melissa Kruzel as Class Representative, and James L. Davidson of Greenwald Davidson Radbil PLLC and Max S. Morgan of The Weitz Firm, LLC, as Class Counsel. *Id.* at 21. The parties then commenced notice to the Class and proceeded with the claims administration process. Pl. Mot. Final Approval at 4–5.

Per the Preliminary Settlement Agreement, Defendants established a non-reversionary, interest-bearing common fund of $1,927,500 to compensate claimants for their TCPA claims. *Id.* at 9. The Administrator, Simpluris, Inc. ("Simpluris"), originally estimated the number of potential claimants as 17,041. Simpluris Decl. ¶ 10, ECF No. 115. The Administrator successfully delivered postcard notices with detachable claim form to 15,322 potential claimants. *Id.* ¶ 15; *see also id.*, Ex. C (Postcard Notice), ECF No. 115 at 13. The Administrator also maintained a toll-free phone line and a dedicated website with Q&A and claim form. *Id.* ¶¶ 16–18; *see also id.*, Ex. D (Website Pages), ECF No. 115 at 16. By the July 6, 2026, deadline—45 days after mailing the postcards—the Administrator had received only 611 timely and valid claim forms. *Id.* ¶ 21. Also, by the deadline, the Administrator received no objections to the Settlement and no opt-outs from the Settlement. *Id.* ¶ 20. In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(D), 1453, and 1711–1715 ("CAFA"), the Administrator also served written notice of the

proposed Settlement to the appropriate state Attorneys General. *Id.* ¶¶ 8–9; *see also id.*, Exs. A, B (CAFA Communications), ECF 115 at 7, 10. No objections were received. *Id.*

Originally, based on historical claim rates, Plaintiff had estimated that each claimant would receive an award in the range of $319 to $638 in cash. Pl. Mot. Prelim. Approval at 17, ECF No. 105. But because only 611 claimants filed a timely and valid claim, Plaintiff now estimates that each claimant will receive more than $1,965 in cash. Pl. Mot. Final Approval at 4.

On June 4, 2026, Plaintiff filed a motion for attorneys' fees in the amount of $642,500 or a third of the $1,927,500 common fund; reimbursement of litigation costs and expenses of $23,252; and a $12,500 incentive award to Plaintiff for her service to the Class. Pl. Fees Mot. at 10.

On August 17, 2026, a final Fairness Hearing was held to determine whether the claims asserted in the action satisfy, for settlement purposes only, the applicable prerequisites for class action treatment; whether the proposed Settlement Agreement is fundamentally fair, reasonable, adequate, and in the best interest of the Settlement Class; and whether the Court should finally approve that Agreement. ECF No. 110.

The parties now request final certification, for settlement purposes only, of the Settlement Class under Fed. R. Civ. P. 23(b)(3) and final approval of the proposed Class Settlement.

## LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement before class

certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). After a court grants preliminary approval of a class action settlement and after notice is given to class members, the court then determines whether final approval is warranted. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Accordingly, a court considers the following *Hanlon* factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* The list of factors is "by no means an exhaustive list of relevant considerations, nor ha[s] [the Ninth Circuit] attempted to identify the most significant factors." *Staton*, 327 F.3d at 959 (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982)).

When examining a settlement for fairness, courts must take the settlement "as a whole, rather than the individual component parts[.]" *Hanlon*, 150 F.3d at 1026. Courts do not have the ability to "delete, modify or substitute certain provisions." *Id.*

(quoting *Officers for Justice*, 688 F.2d at 630). The settlement "must stand or fall in its entirety." *Id.*

## DISCUSSION

I. *Class action prerequisites are met.*

The parties do not dispute that the Court has subject matter jurisdiction over this action.

Under Fed. R. Civ. P. 23, for settlement purposes only and for the reasons explained in the Court's Order preliminarily approving the Settlement, the Court finally certifies that the Settlement Class satisfies the applicable prerequisites for class action treatment:

> (1) The settlement class members are so numerous that joinder of all of them in the Lawsuit is impracticable;
> (2) There are questions of law and fact common to the settlement class members, which predominate over any individual questions;
> (3) Plaintiff's claims are typical of the claims of the settlement class members;
> (4) Plaintiff and her counsel have fairly and adequately represented and protected the
> interests of all settlement class members;
> (5) Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy; and
> (6) A class action is superior to other available methods for a fair and efficient adjudication of this controversy.

Under Fed. R. Civ. P. 23(b)(3), for settlement purposes only and for the reasons explained in the Court's Order preliminarily approving the Settlement, the Court finally certifies the Class as:

> All persons throughout the United States (1) to whom MHI or MHC placed, or Icario, Inc. placed on behalf of Defendants, a call, (2) directed to a number assigned to a cellular telephone, but not assigned to a person who has or had an account or plan with MHI or MHC, (3) which MHI or MHC or Icario, Inc. dispositioned as Wrong Number in its

> records and is one of the numbers that appears in either MOLINA_006055 or ICARIO000017 (4) in connection with which MHI or MHC or Icario, Inc. used an artificial or prerecorded voice, (5) from May 30, 2021 through April 26, 2026.

Under Fed. R. Civ. P. 23(c), for settlement purposes only and for the reasons explained in the Court's Order preliminarily approving the Settlement, the Court finally certifies Ms. Kruzel as the class representative, and James L. Davidson of Greenwald Davidson Radbil PLLC and Max S. Morgan or The Weitz Firm, LLC, as Class Counsel.

II. *The Settlement is fair, reasonable, and adequate under Rule 23(e).*

To determine whether a settlement is fair, reasonable, and adequate, a court considers not only the eight *Hanlon* factors, but also the additional Rule 23(e) requirements that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e). And a court considers whether the settlement contains any "warning signs" of collusion or unfairness. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

A. *The Agreement contains no Bluetooth indicia of collusion or unfairness.*

Under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), any of the following can indicate collusion or unfairness: (1) where counsel receives a disproportionate distribution of the settlement, or where the class receives no monetary distribution but class counsel are amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a

defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) where the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class. *Id.* (internal citations and quotation marks omitted).

Here, the Settlement contains no *Bluetooth* indicia of collusion or unfairness. First, although counsel moves for attorneys' fees of 1/3 of the settlement fund, in addition to reimbursement of litigation fees and expenses, claimants will each receive a significant cash award of more than $1,965. The per-claimant award is on the high side of TCPA awards. Second, the Settlement contains no clear-sailing agreement or any agreement by Defendants not to oppose or to limit their opposition to Class Counsel attorneys' fees. Further, Class Counsel attorneys' fees will be paid from the settlement fund, not separate from it. Class Counsel have no incentive to limit the size of the settlement fund. Third, Defendants created a non-reversionary common fund, so no unclaimed or any other funds revert to them. And claimants receive their award in cash, not voucher or coupon.

B. *The Hanlon factors favor approval of the Agreement.*

"Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. Accordingly, a court considers the following *Hanlon* factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and

the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* The list of factors is "by no means an exhaustive list of relevant considerations, nor ha[s] [the Ninth Circuit] attempted to identify the most significant factors." *Staton*, 327 F.3d at 959 (quoting *Officers for Justice*, 688 F.2d at 625).

1. *The first three Hanlon factors favor approval.*

The first three *Hanlon* factors, (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; and (3) the risk of maintaining class action status throughout the trial, favor approval of the Agreement.

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "In the context of a class action, the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest." *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) (internal citation and quotation marks omitted); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources") (internal citation and quotation marks omitted).

Here, Defendants vigorously disputed that they violated the TCPA and have raised defenses throughout this litigation. The case was in its third year when the parties decided to settle. Absent settlement, the parties likely faced more years of litigation, including summary judgment motions, additional discovery, trial, and appeals. The case complexity and likelihood of further risk, expense, and duration of litigation supports the Settlement. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"). Further, given the relatively small amount of statutory damages for individual TCPA violations, "putative class members . . . would have little incentive to prosecute their claims on their own." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz. 2019). Accordingly, the Court concludes that the Settlement avoids prolonged litigation and provides to the Settlement Class an opportunity to receive a certain substantial individual cash award in the present rather than an uncertain outcome in the future—an award that putative class members would likely not have pursued on their own. These factors favor approval.

2. *The fourth Hanlon factor favors approval.*

The fourth *Hanlon* factor, the amount offered in settlement, also favors approval of the Agreement.

After deducting administration costs, attorneys' fees and expenses, and an incentive award to Ms. Kruzel, class members who submitted timely and valid claim forms will receive an all-cash settlement of more than $1,965 from the non-reversionary common fund. This award is on the high side of per-claimant TCPA awards. *See, e.g.*, *Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337, at *3 (M.D. Fla. July 10, 2025) ("The per-claimant recovery of over $146 provides class members with monetary relief that exceeds other approved TCPA class action settlements.") (collecting cases with per-claimant award ranging from $20 to $52.50); *Daugherty v. Credit Bureau Servs. Ass'n.*, No: 4:23-cv-01728, 2025 WL 1618354, at *3 (S.D. Tex. June 6, 2025) ("And notwithstanding, the settlement exceeds on a per-claimant recovery basis other recently approved TCPA class action settlements. Indeed, after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Plaintiff, participating settlement class members who submitted approved claims will receive approximately $226 each. This far surpasses comparable figures in other approved TCPA class settlements."); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action."); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank*

*of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving "lower range" per-claimant TCPA award of $20 to $40 and comparing with other California cases with per-claimant awards ranging from $100 to $300 during that time); *but see Arthur v. Oregon Cmty. Credit Union*, No. 6:24-CV-01700-MC, 2026 WL 103162, at *3 (D. Or. Jan. 14, 2026) (approving award of "just under $10,700" to each of only 113 claimants of 1,278 potential class members after deduction of administration costs, attorneys' fees and costs, and incentive award).

The Court concludes that the immediate significant cash settlement favors approval of the Agreement.

3. *The fifth and sixth Hanlon factors favor approval.*

The fifth and sixth *Hanlon* factors, the extent of discovery completed, and the stage of the proceedings, and the experience and views of counsel, favor approval of the Agreement.

"The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). "A key inquiry is whether the parties had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. C13-1347 JCC, 2015 WL 11234156, at *5 (W.D. Wash. Dec. 11, 2015). Moreover, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table[,] where the parties have sufficient information to make an informed decision about settlement." *Gabriel v.*

*Nationwide Life Ins. Co.*, No. C09-0508-JCC, 2010 WL 11684280, at *3 (W.D. Wash. Aug. 9, 2010) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

The question is whether the Agreement was reached by arm's length negotiation. "[A] presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Bykov v. DC Transp. Servs., Inc.*, No. 2:18-CV-1691 DB, 2019 WL 1430984, at *5 (E.D. Cal. Mar. 29, 2019).

Here, Class Counsel have extensive experience in TCPA class litigation. Plaintiff and her counsel "firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the settlement class." Pl. Mot. Final Approval at 11. More than two years of contested litigation has resulted in written discovery and document productions, subpoenas, a deposition under Rule 30(b)(6), significant motions practice, and two mediation sessions. *See Bykov*, 2019 WL 1430984, at *5–6 ("participation in mediation tends to support the conclusion that the settlement process was not collusive"); *Schuchardt v. Law Off. of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement."). The absence of any *Bluetooth* indicia of unfairness also supports that the Agreement was reached by arm's length negotiation. These factors favor approval.

4. *The seventh and eighth Hanlon factors favor approval.*

The seventh and eighth *Hanlon* factors, the presence of a governmental participant, who filed no objection, and the reaction of the class members to the proposed settlement, favor approval of the Agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Schuchardt*, 314 F.R.D. at 686 ("The Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."). Further, the appropriate state Attorneys General were informed of the Settlement and its terms and filed no objections. These factors favor approval.

C. *The remaining Rule 23(e) factors favor approval of the Agreement.*

Finally, to approve a class action settlement Agreement, Rule 23(e) requires that a court determine, in addition to the factors considered above, that "(A) the class representatives and class counsel have adequately represented the class; . . . [and] (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e).

In its Order preliminarily approving the Settlement, the Court concluded that Plaintiff and Class Counsel would adequately represent Class Members' interests based on a lack of conflict with any class member, Ms. Kruzel's active involvement in the case and the work she invested in it, and counsel's extensive experience with TCPA class litigation. *See* Opinion & Order at 6–7. And, as discussed above, Plaintiff

and Class Counsel in fact obtained a result that is at the high end of per-claimant TCPA awards, even after deductions for administration expenses, attorneys' fees and costs, and Ms. Kruzel's incentive award.

That potential class members are treated equitably relative to each other is reflected in the means by which potential class members were noticed and by claimants' receipt of an equal portion of the common fund after deductions. Notice by direct mail postcard with claim form and by website with claim form was provided broadly and equitably to potential claimants via reverse phone number lookup, as explained below. Each class member thus received the same opportunity to submit a claim, object to the terms of the Agreement, and to opt out of any release of claim against Defendants. Finally, each claimant will receive an equal portion of the fund.

III. *Class notice met due process requirements.*

Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1). The court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).

Here, the Administrator identified potential settlement members via reverse number lookup from phone numbers provided by Defendants and, on May 21, 2026, mailed a postcard with detachable mail-in claim form to each. Simpluris Decl. ¶¶ 10–14; *see also id.*, Ex. C, ECF No. 115 at 13 (Postcard Notice). The Administrator also made available on May 21, 2026, an interactive website with an "online Claim Form module" and a toll-free Interactive Voice Response telephone hotline with pre-recorded questions and answers available 24 hours a day. *Id.* ¶¶ 16–18; *see also id.*, Ex. D, ECF No. 115 at 16 (Website Pages). Potential settlement members were advised how to submit a claim, file an objection, or opt out of the Agreement, and the deadline for doing so. Simpluris Decl., Ex. C, Ex. D. They were also advised that failure to opt-out would result in the loss of any claim against Defendants. *Id.* Finally, potential settlement members were advised of the date of the Court's August 17, 2026, Fairness Hearing. *Id.*

The form and substance of the notice conformed with the Court's Order preliminarily approving the Settlement and is typical of TCPA class actions. *See, e.g.*, *Arthur*, 2025 WL 2737170, at *6 (approving the form and substance of a postcard notice, detachable claim form, and question-and-answer notice to appear on a dedicated settlement website); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090, at *5 (M.D. Fla. Apr. 2, 2019) (approving use of reverse number look up to identify potential claimants, and approving form and substance of notice provided by direct mail postcard with claim form and question and answer notice by dedicated website); *James*, 2016 WL 6908118, at *2 (approving use of

reverse number look up, and approving form and substance of notice provided by direct mail postcard with claim form, dedicated website with claim form, phone hotline, and publication in *People* magazine).

The Court thus concludes that, despite the low response rate, the notice satisfied the Rule 23 and due process requirements and was the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

IV. *The requested costs and fees are awarded.*

The Administrator moves to be reimbursed for the cost of administering the Settlement, including fees incurred and anticipated future costs for completion of the administration, of $36,949. Simpluris Decl. ¶ 22.

Plaintiff moves the Court for the award of Class Counsel attorneys' fees of one-third of the $1,927,500 common fund, or $642,500; reimbursement of $23,252 for litigation costs and expenses; and an incentive award of $12,500 for Plaintiff's service to the Class. Pl. Fees Mot. at 10.

The fees and awards are granted.

## CONCLUSION

For the reasons above, Plaintiff's Motion for Final Approval of Class Action Settlement, ECF No. 114, is GRANTED. Administrator Simpluris' Motion for reimbursement of administration costs of $36,949 from the common fund, ECF No. 115, is GRANTED. And Plaintiff's Motion, ECF No. 111, for an award of Attorneys' Fees of $642,500; reimbursement of litigation costs and expenses of $23,252; and Plaintiff's incentive award of $12,500 is GRANTED.

The Court approves the Final Settlement Agreement and incorporates it into this Order. The Agreement must be consummated in accord with its terms and conditions, except as amended by an order of this Court. The material terms of the Agreement include, but are not limited to, the following:

A. Settlement Fund. Defendants established a $1,927,500 non-reversionary fund (the "Settlement Fund").

B. Deductions. The following shall be deducted from the Settlement Fund before any other distributions are made:

> a. The costs for the administration of the Settlement and class notice;
>
> b. Class Counsel's attorneys' fees in the amount of $642,500, and reimbursement of Class Counsel's litigation costs and expenses in the amount of $23,252; and
>
> c. Plaintiff's incentive award of $12,500 for her service to the Class members.

C. Settlement Payments to Class Members. Each settlement class member who has submitted a valid and timely claim form will receive compensation as stated in the Agreement. Each settlement check will be void one-hundred twenty days after issuance. The settlement class members were given an opportunity to object to the settlement. No settlement class members objected to the settlement or the requests for attorneys' fees, costs, expenses, or an incentive award. No settlement class members made a valid and timely request for exclusion.

This Order is binding on all settlement class members. Plaintiff, settlement class members, and their successors and assigns are permanently barred from

pursuing, either individually or as a class, or in any other capacity, any of the released claims against the released parties, as stated in the Agreement. Under the Agreement, the released claims are compromised, settled, released, and discharged, because of these proceedings and this Order. This final Order bars and permanently enjoins Plaintiff and all members of the Settlement Class from

> (a) filing, commencing, prosecuting, intervening in, or participating as a plaintiff, claimant, or class member in any other lawsuit, arbitration, or individual or class action proceeding in any jurisdiction (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), asserting the released claims, and
>
> (b) attempting to effect opt-outs of a class of individuals in any lawsuit or arbitration proceeding based on the released claims, except that settlement class members are not precluded from addressing, contacting, dealing with, or complying with requests or inquiries from any governmental authorities relating to the issues raised in this Lawsuit or class action settlement.

This Order, the Agreement, and any and all negotiations, statements, documents, and proceedings in connection with this Settlement are not and will not be construed as an admission by Defendants of any liability or wrongdoing in this or in any other proceeding. This Order is not a finding of validity or invalidity of any of the claims asserted or defenses raised in the Lawsuit. In no event shall this Order, the fact that a settlement was reached, the Agreement, or any of its provisions or any negotiations, statements, or proceedings relating in any way be used, offered, admitted, or referred to in the Lawsuit, in any other lawsuit, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the parties and only by the parties in a proceeding to enforce the Agreement.

This Court hereby retains continuing and exclusive jurisdiction over the parties and all matters relating to this lawsuit or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the Settlement Agreement and this Order, including the award of attorneys' fees, costs, disbursements, and expenses to Class Counsel, and Plaintiff's incentive award.

Judgment shall be entered accordingly.

It is so ORDERED and DATED this 27th day of August 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge